KAREN L. LOEFFLER
United States Attorney

STEVEN E. SKROCKI
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska   99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: steven.skrocki@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 4:15-cr-00023-RRB |
| | ) | |
| Plaintiff, | ) | **UNITED STATES' SENTENCING** |
| | ) | **MEMORANDUM** |
| vs. | ) | |
| | ) | |
| CLARK W. DIXON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW the United States of America, by and through undersigned counsel, and files with the court a sentencing memorandum in the above captioned case.  For the reasons provided below, the United States requests that the court impose sentence in conformity with the plea agreement entered into by the parties.

## I. SUMMARY OF SENTENCING RECOMMENDATIONS

**TERM OF IMPRISONMENT**.............................................................. **18 Months**
**SUPERVISED RELEASE**.......................... **3 Years, No Hunting/Field Condition**
**FINE** ...................................................................................................**$75,000**
**RESTITUTION**........................................................................................**N/A**
**SPECIAL ASSESSMENT**....................................................................**$200.00**
**FORFEITURE** .................................... **Per Attachment A to the Plea Agreement**

The defendant Clark W. Dixon will be entering a plea of guilty to two felony violations of the Lacey Act for actions taken by him in covering up the illegal take of a Grizzly Bear in the Noatak National Preserve in September 2008, and in illegally transporting and non-resident hunters for money or other consideration on illegal hunts conducted by him in the Noatak Preserve in 2008. For the reasons provided below, the parties request that the court accept the agreement and sentence Clark W. Dixon to the terms of the plea agreement.

## II. GUIDELINE APPLICATIONS

### A. Application

The Guideline provisions for this offense would provide for an adjusted sentencing guideline range of 17, with a sentencing range of 24-30 months. The parties are recommending a sentence of 18 months for both counts.

In addition, and based on the facts of the hunts, and other information obtained by the investigation, the parties will also be recommending a term of

supervised release for three years, with a world-wide hunting ban, and no accompaniment of anyone in the field who is hunting, a fine of $75,000, and forfeiture of a significant number of trophies, illegally taken. The fine range is an amount available under the guidelines, but below the statutory maximum of $250,000. The court has discretion, under the section 3553 factors, to impose a fine range in that amount. At sentencing the government will ask the court to direct in the judgment that the fine be directed toward the Lacey Act Reward Fund.

> B. **Acceptance of Responsibility**

As of this writing, and due to the plea agreement, the United States urges the court to award the defendant a three-point reduction for acceptance of responsibility. After contact by law enforcement the defendant immediately obtained counsel and an agreement was quickly structured. Mr. Dixon never considered a trial track for this case but right away took responsibility for his actions, which the government wishes the court to recognize.

> C. **Criminal History Category Computation**

The defendant's criminal record is Category 1.

### III. APPLICATION OF 18 U.S.C. § 3553(a)

In addition to the Guidelines, the following sentencing factors set forth in 18 U.S.C. § 3553(a) apply with respect to the sentence to be imposed in this case: (1) the nature and circumstances of the offense and history and characteristics of

U.S. v. Clark W. Dixon  Page 3 of 12
4:15-cr-00023-RRB
Case 4:15-cr-00023-RRB   Document 24   Filed 02/05/16   Page 3 of 12

the defendant; (2) the need for the sentence to reflect the seriousness of the offense, afford deterrence, protect the public from further crimes and provide the defendant training and treatment; (3) the kinds of sentences available; (4) the established Guidelines sentencing ranges; (5) any pertinent Guidelines policy statements; (6) the need to avoid unwarranted sentence disparity between defendants with similar records convicted of similar crimes; and (7) the need to provide restitution to victims of the offense. See, 18 U.S.C. § 3553(a)(1) through (7). Each sentencing factor is addressed in turn:

    **A.    Nature and Circumstances of Offense and the History and Characteristics of the Defendant.**

        **1.    History and Characteristics of the Defendant – Unlawful Conduct**

Clark W. Dixon has no criminal history known to the United States. His criminal history is therefore Category 1.

        **2.    The Instant Offense – The Counts of Conviction**

<u>Count 1 – Illegal Take of Brown Bear 2010</u>

In September 2010, Clark W. Dixon hunted with individual Michael Osborne at a spike camp in the Noatak National Preserve for brown bear. The hunting camp was located in state of Alaska GMU 23. Prior to the hunt, uncharged Michael Osborne did not apply for, or receive the appropriate ADF&G brown bear draw permit, did not purchase a non-resident brown bear tag and did

not contract with an Alaska Big Game Guide, all of which would be required for Michael Osborne, a non-resident, to legally hunt brown bear in the state of Alaska.

On or about September 13, 2010, uncharged individual C flew Michael Osborne to the spike camp in GMU 23. Approximately two hours after landing in the field, Clark W. Dixon, Michael Osborne, and individual C left the camp on foot to go hunting with Clark W. Dixon and individual C leading the hunting party down a drainage in the direction of the brown bear located from the air. A brown bear was spotted, stalked, then shot and killed by Michael Osborne, after the brown bear had been spotted from the air. Clark W. Dixon skinned the brown bear for a full size standing mount and transported the bear back to a spike camp. Michael Osborne then permitted Clark W. Dixon to claim the brown bear had been taken by Clark W. Dixon's father, Clark Dixon. Michael Osborne used Clark W. Dixon's father, Clark Dixon's ADF&G brown bear draw permit and non-resident brown bear tag in order to conceal the illegally killed bear. Clark W. Dixon falsely claimed to be a resident of Alaska which permitted his father to apply for and receive the ADF&G brown bear draw permit and then purchase the non-resident brown bear tag under as second degree of kindred. Clark Dixon, Clark W. Dixon's father, later filed a false report with ADF&G claiming he killed the bear.

Clark W. Dixon arranged for and transported the brown bear from the field to a taxidermist in Wasilla, Alaska. The unlawfully killed brown bear was

thereafter transported after taxidermy to the state of Mississippi and placed in Michael Osborne's home.

Count 2 – Illegal Take and Transport of Game, Transporting, and Outfitting

From 2008 up through 2013, Clark W. Dixon transported and outfitted various individuals at a remote base camp and various spike camps in the Noatak National Preserve for the illegal take and transport of bull moose, caribou, Dall sheep, wolf and brown bear game outside of the state of Alaska. The hunting camps were located in state of Alaska GMU 23 and had been existence and utilized for more than ten years by Clark W. Dixon and Clark Dixon. On a number of occasions, several of Clark W. Dixon's associates failed to apply for, and did not possess the appropriate ADF&G moose or bear draw permits, non-resident tags, or hunt with a licensed Alaska big game guide as was required by Alaska law. For each of the hunts, Clark W. Dixon, or his father, would receive payments in the thousands of dollars from the hunters. These amounts would sometimes be agreed to in advance by Clark W. Dixon and the hunters. The parties have no agreement as to whether the nature of payments received from hunters by Clark Dixon's father amounted to compensation as defined in A.S.08.54.790. However, In connection with these hunts, Clark W. Dixon and his associates hunted same day airborne, knew Clark W. Dixon was not a licensed and registered Alaska big game guide, did not have the appropriate tags and permits, and, when necessary,

U.S. v. Clark W. Dixon                Page 6 of 12
4:15-cr-00023-RRB
Case 4:15-cr-00023-RRB   Document 24   Filed 02/05/16   Page 6 of 12

falsified ADF&G hunting records to conceal the illegal nature of these hunts. The methods and means to conceal the illegal nature of these hunts by Clark W. Dixon included, but were not limited to falsely claiming to be an Alaska resident and hunting Dall Sheep and brown bear without a guide, and or falsely claiming an illegal take of brown bear, moose and caribou by others as his own, or, on occasion, illegally relying on various provisions of Alaska law which allowed take of a brown bear by second degree of kindred.

> **B.    Need for the Sentence to Reflect the Seriousness of the Offense, Afford Deterrence, Protect the Public, and Rehabilitate the Defendant.**

The Significance of Wildlife to Alaska

The defendant in this case took advantage of Alaska's fish and game laws, and hunted as if a resident when he clearly was not. In some ways, his hunting activity was directed socially with friends, in other ways it was directed toward fostering and improving his Cable Television hunting show. As mentioned elsewhere, all of Dixon's Alaska hunts, broadcast on his show, depicted animals killed on illegal hunts. It is an egregious form of televised fraud, and does the state of Alaska, the concept of fair chase, and hunters who spend their lives hunting by the book, a huge disservice. In many respects it is a betrayal of the hunter's code of ethical conduct in the field.

//

U.S. v. Clark W. Dixon                           Page 7 of 12
4:15-cr-00023-RRB
Case 4:15-cr-00023-RRB   Document 24   Filed 02/05/16   Page 7 of 12

The hunting and viewing of wildlife is a significant component of the economic engine powering the state of Alaska's economy. In 2011, residents and visitors spent $3.4 billion in Alaska on wildlife, with those funds supporting local businesses, lodging, transport companies, retail stores, and providing salaries, employment and other commercial opportunities all over the state. During that year, Alaska residents alone spent $1 billion on hunting while visitors to this state spent approximately $150 million on hunting and $1.2 billion on wildlife viewing. Spending on hunting and wildlife viewing in 2011 supported roughly 8% of Alaska's total economic output, 6% of its employment and provided $343 million in revenue to state and local governments. By these figures, wildlife is a significant business enterprise by any calculation and one of the most important draws to visitors near and far for a multitude of outdoor related activities.[1]

The agreement structured by the parties, without doubt, is significant. In so structuring, the government took into account the defendant's vast hunting experience, and obvious leadership qualities. He seemed to possess a significant amount of field charisma, which his friends and other associates became susceptible towards. Two convictions, and a significant fine, in the amount of $75,000, (which should be directed toward the Lacey Act Reward Fund) and a

---

[1] ECO Northwest. 2014. The Economic Importance of Alaska's Wildlife in 2011. Summary report to the Alaska Department of Fish and Game, Division of Wildlife Conservation. *See,* http://www.adfg.alaska.gov/static/home/news/ongoingissues/pdfs/the-economic-importance-of-alaskas-wildlife-in-2011-summary-report.pdf

U.S. v. Clark W. Dixon    Page 8 of 12
4:15-cr-00023-RRB
Case 4:15-cr-00023-RRB   Document 24   Filed 02/05/16   Page 8 of 12

three year ban on hunting worldwide are all consequences which could be imposed if the matter had gone to trial. The only issue on a hunting prohibition is leaving the decision of accompanying his wife and daughter in the field, to the discretion of the probation officer after the defendant completes his sentence.

With regard to deterrence, the agencies entrusted to protect and defend the resources of Alaska face daunting obstacles with limited resources to cover a state of such magnitude. The Noatak Preserve alone exceeds 112 million acres no agency charged to protect it can afford coverage. Most certainly there are no National Park Rangers, Fish and Wildlife Service Agents or Alaska Wildlife Troopers concealed behind every alder patch attempting to ensure compliance with state and federal hunting law. In that regard society has determined that the obligation to comply with the law lies with the hunter in the field. As stated by one defendant in this case, the illegal kills occurred "because we didn't think we'd get caught." That, is most likely the case. In this case, and others to follow, that obligation and ethical duty was abandoned, frequently, year after year, in violation of the law and the hunter's code of ethics and in part to fuel cable TV ratings. Perhaps this was brought on by the remoteness of the hunting camp and a perceived omnipotence because of the off chance of apprehension.

Unfortunately, Mr. Dixon, being the leader of the group, led others down a path of illegality, all against their better judgment. Instead of leading by example

U.S. v. Clark W. Dixon    Page 9 of 12
4:15-cr-00023-RRB
Case 4:15-cr-00023-RRB   Document 24   Filed 02/05/16   Page 9 of 12

and ensuring an ethical and clean camp with legal kills, Clark Dixon led and guided these illegal takes, acts of which he is now being required to answer.

### C. Kinds of Sentences Available

The only other type of sentence available for this defendant is one that imposes a term of jail time or home confinement, neither which the government is recommending based on the offense conduct, the defendant's personal characteristics and background.

### D. Sentencing Ranges Available

The sentence recommended by the United States is within that which would ultimately be calculated by the Presentence Report and the Sentencing Guidelines.

### E. Pertinent Policy Statements

The United States is unaware of any pertinent policy statements applicable to the sentence it recommends.

### F. Need to Avoid Sentence Disparity

This sentence is comparable to other illegal hunting cases based on the evidence and matters believed to be provable at trial. The sentence sought takes into account the specific count of conviction and falls within the middle of the applicable fine range and range of probation.

//

//

### G. Fine/Forfeiture

The fine of $75,000 sought by the United States is significant. It is, however, still well below the statutory maximum of $250,000. Due to Clark W. Dixon's conduct in this case overall a significant fine is easily justified. The government requests that the fine amount be directed toward the Lacey Act Reward Fund, administered by the U.S. Fish and Wildlife Service.

The defendant has also agreed not to contest forfeiture in this case, a Stohl Quest SQ-4 aircraft, estimated to be worth $180,000 to $200,000. A preliminary order of forfeiture will be filed at imposition of sentence/change of plea, and the defendant has agreed not to contest any aspect of forfeiture whether civil, or criminal as set forth in the plea agreement nor to contest forfeiture of any trophies.

## IV. CONCLUSION

The court has before it a dynamic individual whose lead a very accomplished hunting life and is by any account well-settled in his personal life. However, he, like so many others in this case, led others to go wrong instead of right. The parties' agreement, however, takes into account all of the factors required under the Sentencing Guidelines and the Section 3553 factors. Given all of the foregoing, the United States requests that the court sentence the defendant in conformity with the recommendations made herein and in the plea agreement as

//

U.S. v. Clark W. Dixon  Page 11 of 12
4:15-cr-00023-RRB
Case 4:15-cr-00023-RRB   Document 24   Filed 02/05/16   Page 11 of 12

they fully meet the statutory factors provided in 18 U.S.C. § 3553 for the offenses of conviction and the offense conduct.

RESPECTFULLY SUBMITTED February 5, 2016, in Anchorage, Alaska.

KAREN L. LOEFFLER
United States Attorney

s/Steven E. Skrocki
STEVEN E. SKROCKI
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2016, a copy of the foregoing was served electronically on:

Brent R. Cole

s/Steven E. Skrocki
Office of the U.S. Attorney